UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Walter Louis Franklin, II, Trustee For the Estate of Terrance Terrell Franklin, <br><br> Plaintiff, <br><br> vs. <br><br> Lucas Peterson, individually, and in his official capacity; Michael Meath, individually, and in his official capacity; Janee Harteau, Chief of Police for the Minneapolis Police Department, individually and in her official capacity; and the City of Minneapolis, <br><br> Defendants. | CASE 0:14-cv-01467-DWF-JSM <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL** |

## I. Introduction

This matter, in essence, a motion to compel, is before the Court pursuant to the four issues noted in the Notice of Hearing. This Memorandum of Law will present those issues in the same order after a brief recitation of the factual background of this matter as same pertains to the issues at hand.

## II. Factual Background

On May 10, 2013, four members of the MPD SWAT team cornered Plaintiff's decedent Terrance Franklin in the basement of a South MPLS home in an attempt to apprehend him. Franklin was shot ten times at point blank range with mostly shots to the head, neck, and upper torso.

The events that occurred in the moments before Franklin's homicide are a matter of significant dispute. Plaintiff claims that Franklin was killed in part due to his race, and a cell phone recording by a witness who was positioned across the street from the home during the event records MPD personnel addressing Franklin as "nigger" before he was killed.

Defendants deny this allegation, but in June of 2013, two full time MPD SWAT members were off-duty in Green Bay, Wisconsin and allegedly got in a fracas with black men in the early morning hours of 6/29/13. This was an event that allowed people a glimpse into the soul of MPD SWAT and what was seen was not pretty. For example:

1. One of the officers saw a black man drive by in a old, classic car with fancy rims, and said: "What's that? Green Bay is too nigger friendly."

2. Both officers, when a black man walked by them on a sidewalk, used the "N word."

3. A Green Bay officer who arrived after the fracas with the black men heard one say, "nigger."

4. One of the officers, referring to the black men, said they were doing "their monkey thing."

5. One amazingly alleged that it was his constitutional right to use the word "nigger" publicly.

The reasonable question for Plaintiff's counsel in this matter is: was this the conduct of two rogue MPD SWAT team members or just part of the day- to-day culture and basic behavior of SWAT team members? It is reasonable for Plaintiff's counsel to inquire from these two

officers about that subject in depositions.  Not surprisingly, they have both been terminated.  To be fair, this termination was also due in part not only to their apparent racist conduct, but also the comment of one that "… we have a lesbian fucking chief looking to fire people for any reason."  The termination made clear that the conduct of the officers had not only offended people of color, for obvious reasons, but also the GLBT community of the city where they were employed.

### III.   The Issues at Hand

**A.   Plaintiff's Expert Richard Ernest**

Richard Ernest is an expert in the area of firearms reconstruction.  This is a technical, scientific area of expertise, and Mr. Ernest has a science lab in Fort Worth, Texas, which is ASCLD-LAB accredited.

His work requires the utilization of sophisticated lab equipment such as scales and other measuring devices that cannot feasibly be removed from the lab and shipped to Minneapolis.

For example, fired bullets, including bullet fragments and bullet jackets, recovered from the scene, along with fired cartridge cases and unfired rounds, require laboratory microscopes to analyze.  It is not feasible to carry large expensive microscopes into the field, and in short, testing like this cannot be done on the road.

With a letter dated 5/15/15, Plaintiff's counsel advised defense counsel of this need.  Defense counsel asked that same be reduced to a formal pleading as can be seen from Exhibit B.

Defense counsel, with their responsive pleading, Exhibit C, are taking the position that the evidence should be produced for Plaintiff's expert in Minneapolis which is simply not acceptable for the reasons herein noted.

**B. Extension of Time**

Under the circumstances of this situation, Plaintiff's counsel requests that Mr. Ernest be granted additional time to submit his report.  Sixty days is requested.

## C. Addresses of the Officers from the Green Bay Incident

Plaintiff's counsel desire depositions of the fired officers, Shawn Powell and Brian Thole. They are no longer employed with MPD. Defense counsel has refused to provide their home addresses.

Long ago, Plaintiff's counsel emailed the attorney who represented these two officers in the hearing before the Civil Service Commission (CSS). There was no response.

Plaintiff's counsel have already executed a protective order which would prevent public dissemination of these addresses, but if the Court feels further assurance is needed in this regard, Plaintiff's counsel will consent. Perhaps these former officers will willingly appear without the need for a subpoena, but Plaintiff's counsel should be given the opportunity to let the officers know of the desire for their testimony. It is also probable that the lawyer who handled their cases before the CSC probably no longer has an attorney client relationship with either and perhaps has no way to contact them.

The request for their home addresses is reasonable and should be provided by the Defendant City.

## D. Request For More Depositions Beyond 20

Plaintiff's cause of action is broad in scope, and MPD's main report on this homicide, a massive 288 pages in length, consists of statements of at least 40 of their personnel along with witness statements of other agencies.

Plaintiff's counsel currently has 10 depositions scheduled with two already completed. For example, a former mayor, former police chief, and the current police chief are currently scheduled along with the five officers who had direct contact with Plaintiff's decedent.

The bottom line is that there is a massive number of potential witnesses, and Plaintiff's counsel is asking the Court for a slight increase from 20 to 25 discovery depositions for this matter. Further detail will be provided to the Court at the time or oral argument regarding this issue.

## IV.    Conclusion

For the reasons herein noted, Plaintiff's counsel requests that the proposed Order be signed with no substantive amendments.

**PADDEN LAW FIRM, PLLC**

Dated:  August 5, 2015             By: _____
                                       Michael B. Padden, #177519
                                       8687 Eagle Point Boulevard
                                       Lake Elmo, MN 55042-8628
                                       Phone:  (651) 789-6545
                                       Fax:  (651) 433-7123
                                       Email: mike.padden@paddenlaw.com
                                       *Attorney for Plaintiff*

                                       J. Ashwin Madia
                                       Madia Law LLC
                                       345 Union Plaza
                                       333 Washington Avenue North
                                       Minneapolis, MN 55401
                                       Direct:  (612) 349-2723
                                       Fax:  (612) 235-3357
                                       Email:  jamadia@madialaw.com
                                       *Attorney for Plaintiff*