# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Walter Louis Franklin, II, Trustee for the Estate of Terrance Terrell Franklin, | Civil No. 14-1467 (DWF/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Lucas Peterson, individually and in his official capacity; Michael Meath, individually, and in his official capacity; Janeé Harteau, Chief of Police for the Minneapolis Police Department, individually and in her official capacity; and the City of Minneapolis, | |
| Defendants. | |

_____

J. Ashwin Madia, Esq., Madia Law LLC, and Michael B. Padden, Esq., Padden & McCollister PLLC, attorneys for Plaintiff.

Susan L. Segal, City Attorney, Timothy S. Skarda, Sara L. Lathrop, Brian S. Carter, George H. Norris, Assistant City Attorneys, Minneapolis City Attorney's Office, attorneys for Defendants.

_____

# INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Lucas Peterson, Michael Meath, Janeé Harteau, and the City of Minneapolis. (Doc. No. 47.) Plaintiff Walter Louis Franklin, II, as Trustee for the Estate of Terrance Terrell Franklin ("Plaintiff"), initiated this lawsuit after Terrance Franklin ("Franklin") was shot and killed during an altercation with Minneapolis police officers. Plaintiff

asserts four causes of action: excessive force under 42 U.S.C. § 1983 (Count 1); wrongful death (Count 2); intentional infliction of emotional distress (Count 3); and negligence (Count 4). (Doc. No. 2.) The parties stipulated to the dismissal of the claim for intentional infliction of emotional distress (Count 3). (Doc. No. 58.) For the reasons set forth below, Defendants' Motion is denied as to Counts 1 and 2 and granted as to Count 4.

## BACKGROUND

This case arises out of deadly force used by police against Terrance Franklin, a young, black male, on May 10, 2013. Police became involved with Franklin after being contacted by a bystander who believed that Franklin was the person he had seen on security footage from an apartment building that had been burglarized. (Doc. No. 50 at ¶ 2, Ex. 1 at 7, 14-17.) Police officers were dispatched to a parking lot where Franklin was located. (*Id.* ¶ 4, Ex. 3.) Three officers initially responded. (*Id.* ¶ 5, Ex. 4 at 4, 11, 50.) After the officers arrived, Franklin fled the scene in a vehicle he was driving and struck the door of one of the officers' squad cars. (*Id.* ¶ 5, Ex. 4 at 55; *id.* ¶ 6, Ex. 5 at 19, 20, 33-34.)

After fleeing the initial officer interaction, Franklin broke into a home and hid in the basement. (*Id.* ¶ 9, Ex. 8 ("Durand Dep.") at 77.) Franklin was located by a group of police officers from the Minneapolis Police Department including Officers Lucas Peterson, Michael Meath, Mark Durand, Ricardo Muro, and Sergeant Andrew Stender with his K-9 Nash. (Durand Dep. at 90.)

According to Defendants, Franklin was located by K-9 Nash behind the water heater in a small closet under the stairs leading to the basement. (*Id.* at 108.) K-9 Nash bit onto clothing that Franklin was wearing and tried to pull Franklin out from behind the water heater. (*Id.* at 109.) Sergeant Stender claims that he ordered Franklin to "show his hands" several times but Franklin remained in his hiding spot and did not show his hands. (Doc. No. 50 at ¶ 13, Ex. 12 ("Stender Dep.") at 70, 97.) Defendants claim that in an effort to compel Franklin to respond and comply with the officers' orders, Sergeant Stender approached Franklin and struck him in the head with a closed fist, and, when Franklin did not respond, Sergeant Stender hit Franklin with his flashlight. (Stender Dep. at 52, 70.) When Franklin continued to refuse to show his hands, Sergeant Stender moved into the closet and attempted to pull Franklin out from behind the water heater by putting Franklin into a headlock. (*Id.* at 71.) Sergeant Stender states that Franklin resisted. (*Id.*)

To assist, Officer Meath attempted to subdue Franklin by grabbing onto his shoulders, pulling him backwards, and delivering two to three knee strikes to Franklin's upper body. (Doc. No. 50 at ¶ 18, Ex. 17 ("Meath Dep.") at 89-90.) Officers Peterson and Durand state that they heard Officer Meath yell "are you grabbing for my gun?" (Doc. No. 50 at ¶ 10, Ex. 9 ("Peterson Dep.") at 125-25; Durand Dep. at 113.) Officer Meath claims that Franklin then forced his way out of the closet. (Meath Dep. at 91.)

Once out of the closet, Officer Peterson states that Franklin punched Officer Peterson in the face and that Officer Peterson grabbed Franklin's hair, ripping off some

of Franklin's dreadlocks.  (Peterson Dep. at 97-98.)  Franklin then turned and tackled Officer Durand, driving him into the laundry room and to the floor.  (*Id.* at 98; Durand Dep. at 116.)  Defendants claim that as Franklin and Officer Durand fell, Franklin grabbed the pistol grip of Officer Durand's MP5 sub-machine gun and pulled the trigger twice.  (Durand Dep. at 117-20, 129, 130, 141.)  Officers Meath and Muro were each hit by bullets.  (Meath Dep. at 57; Doc. No. 50 at ¶ 16, Ex. 15 ("Muro Dep.") at 100.)

      Officer Durand states that a struggle ensued with Franklin over the MP5, during which the flashlight on the muzzle of the MP5 switched on and Officer Durand yelled out "he's got a gun."  (Durand Dep. at 124-25, 128.)  Officer Peterson states that he saw the struggle over the firearm and that Franklin gained sufficient control of the firearm to point it at Officer Peterson.  (Peterson Dep. at 100, 118.)  Officer Peterson claims that in response to this perceived threat, he moved toward Franklin and Officer Durand, reached out in the darkness for Franklin's head, aimed his handgun, and fired at Franklin five times.  (*Id.* at 101, 104, 107, 111.)  Officer Meath, who had been shot by the MP5, claims that he saw Franklin sitting on the ground, with his arms extended, with Officer Peterson "basically kind of on top of" Franklin.  (Meath Dep. at 101.)  When he spotted a gap between Franklin and Officer Peterson, Officer Meath fired his handgun.  (*Id.* at 101, 103.)  Franklin suffered gunshot wounds to the head and torso of his body and was pronounced dead at the scene.  (Doc. No. 50 at ¶ 7, Ex. 6.)

      Plaintiff contends that there is a genuine dispute about whether the factual claims made by Defendants are accurate.  Plaintiff relies on evidence from a video filmed by

4

Jimmy Gaines.  (Doc. No. 50 at ¶ 25, Ex. 24. ("Gaines Video").)  Plaintiff further relies upon the report of Plaintiff's expert witness, Edward Primeau, which details an analysis of the Gaines Video.  (*Id.* ¶ 26, Ex. 25 ("Primeau Report").)  Plaintiff claims that the Gaines Video and Primeau Report contradict the timeline and sequence of events set forth by Defendants.  Specifically, Plaintiff claims that there is agreement that at second 11 of the Gaines Video, the phrase "officer shot" can be heard.  (Primeau Report at 25; see also Doc. No. 50 at ¶ 32, Ex. 31 ("Wyatt Dep.") at 8.)  At second 43, Primeau states that he heard:  "Come out (unintelligible) . . . put those hands up now[.]"  (Primeau Report at 25.)  Primeau also states that he "believed that [he] heard gunshots" at second 53.  (*Id.* at 26; *see also* Doc. No. 61 at ¶¶ 8, 10, Exs. 7, 9.)  In addition, Plaintiff claims that the deposition of Geoffrey Wyatt—who radioed the "officer shot" statement—demonstrates that statement occurred approximately 30 seconds after the shots were fired.  (Wyatt Dep. at 40-41.)  Thus, Plaintiff claims that there was a gap of over 70 seconds between the time the first shots were fired and the time the officers fired on Franklin.[1]  Based largely on this gap—which Plaintiff claims is inconsistent with the

---

[1] Plaintiff claims that other phrases Primeau identifies in his report show that Franklin was alive and talking at various points.  Plaintiff, however, did not present any evidence indicating that the voice heard by Primeau is in fact Franklin.  At this stage, Plaintiff must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As such, for the purposes of the present Motion, the Court will not rely on unsupported statements made in Plaintiff's briefing.

sequence set forth by Defendants' witnesses—Plaintiff asserts that there is a dispute over whether Franklin continued to pose an immediate threat when he was shot and killed.

Plaintiff further argues that there are genuine issues of material fact due to inconsistencies between the officers' testimony and the facts gathered from the scene. Plaintiff asserts that neither Officer Muro nor Officer Meath observed how the MP5 discharged. (Muro Dep. at 100; Meath Dep. at 97.) Plaintiff additionally notes that the MP5, which according to testimony was the subject of an ongoing struggle when Franklin was shot, had no blood on it, despite ample amounts of blood on items in the laundry room and on Franklin. (Doc. No. 50 at ¶ 22, Ex. 21 at 11-12, 27.) Based on these inconsistencies, Plaintiff argues that a genuine factual dispute exists over whether Franklin was engaged in a struggle over the MP5 when he was shot.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of

every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir.1996); *see also Anderson*, 477 U.S. at 248. The materiality of a fact is determined by the substantive law governing the claim, and "a fact is material if its resolution affects the outcome of the case." *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011). Determination of materiality concerns the "identification of which facts are critical and which facts are irrelevant" to the appropriateness of judgment. *Anderson*, 477 U.S. at 248. Further, a factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250; *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995).

## II.   Count 1:  Excessive Force

Defendants ask the Court to grant summary judgment dismissing Plaintiff's § 1983 claim for use of excessive force in violation of Franklin's Fourth Amendment rights. Defendants argue that Plaintiff's claim fails because Defendants' actions were reasonable and because the officers are entitled to qualified immunity.

### A. Reasonableness of Force

First, Defendants claim that the amount of force used against Franklin was objectively reasonable. To establish an excessive force violation of the Fourth Amendment, a plaintiff must prove that the amount of force used was objectively unreasonable under the particular circumstances of the case. *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006). The test of reasonableness "is not capable of precise definition or mechanical application[.]" *Graham v. Connor*, 490 U.S. 386, 396 (1989). Proper application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quotations omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

"[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation[.]" *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Under Eighth Circuit precedent, "[t]he use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). As with other exercises of force, whether it

was reasonable for an officer to use deadly force is judged from an "on-scene perspective[,]" *Saucier*, 533 U.S. at 205, and is not swayed simply because, "[i]t may appear, in the calm aftermath, that an officer could have taken a different course," *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012).

Defendants contend that the undisputed facts show that the use of deadly force by Officers Peterson and Meath was reasonable under the circumstances they faced. They claim that Franklin wrestled control of Officer Durand's MP5 and shot two officers, and that Franklin was raising the gun towards Officer Peterson when Franklin was shot. (Durand Dep. at 117-20, 129, 130, 141; Peterson Dep. at 100, 118.) Plaintiff, however, raises a genuine dispute as to whether that story is true. According to evidence presented by Plaintiff, more than 70 seconds passed between the shots fired at the officers and the shots that killed Franklin. (Gaines Video; Primeau Report at 25.) Further, Plaintiff points to evidence suggesting the absence of blood on the MP5, which would have been either in Franklin's hand or close to him when Franklin was shot. (Doc. No. 50 at ¶ 22, Ex. 21 at 11-12, 27.) This is at least circumstantial evidence that Franklin was not in possession of the MP5 when Officers Peterson and Meath used deadly force against him. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 821 (8th Cir. 2010) (denying motion for summary judgment based on finding a genuine issue of material fact shown through circumstantial evidence).

Defendants protest that the Gaines Video—upon which Plaintiff relies—fails to create a genuine factual dispute. Specifically, Defendants contend that the Gaines Video

9

is of such poor quality that it is inadmissible. (Doc. No. 62 at 11.) If a video is so garbled that the recording as a whole is untrustworthy, such a video will be not be admitted. *See United States v. Young*, 488 F.2d 1211, 1214 (8th Cir. 1973). The Court finds, however, that the quality of the Gaines Video goes to the weight of the evidence, not its admissibility. Further, Plaintiff does not rely on the Gaines Video alone; in addition, Plaintiff points to the Primeau Report in which Primeau states that he created enhancements to the Gaines Video and believed he heard gunshots. (Primeau Report at 26.) Considering all evidence in the record—including the Gaines Video and the Primeau Report—the Court concludes that genuine issues of material fact preclude summary judgment as to the reasonableness of the force used against Franklin.

**B.     Qualified Immunity**

Second, Defendants argue that Officers Peterson and Meath are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When considering qualified immunity, a court may first consider "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right[,]" and second consider "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier*, 533 U.S. at 201). For a constitutional right to be clearly established, its contours

"must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

Defendants argue that Officers Peterson and Meath believed they were acting reasonably when they used deadly force against Franklin. Specifically, Defendants point out that officers may use deadly force when faced with an apparently loaded weapon, when they believe a suspect has a gun, and when they believe that a suspect is reaching for a weapon. *See Thompson v. Hubbard*, 257 F.3d 986, 898-900 (8th Cir. 2001); *Sinclair v. City of Des Moines*, 268 F.3d 594, 596 (8th Cir. 2001); *Loch v. City of Litchfield*, 689 F.3d 961, 966-67 (8th Cir. 2012). However, as Plaintiff notes, where a suspect "poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). Eighth Circuit precedent makes clear that officers are "on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005). While it is certainly true that Officers Peterson and Meath were faced with a situation that posed a significant threat of death or serious physical injury to them or others, a factual dispute exists over whether such a situation was present at the time when the officers used deadly force against

Franklin. Therefore, taking all facts in the light most favorable to Plaintiff, the Court cannot conclude that qualified immunity shields Defendants.

## IV.   Count 2:  Wrongful Death

Defendants next argue that Plaintiff's wrongful death claim should be dismissed. "When death is caused by the wrongful act or omission of any person . . . , the trustee . . . may maintain an action therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission." Minn. Stat. § 573.02. Defendants assert that because Officers Peterson and Meath were facing a suspect with a loaded gun aimed at Officer Peterson, Officers Peterson and Meath committed no wrongful act or omission causing Franklin's death. (Doc. No. 49 at 30.) As discussed above, however, Plaintiff raises genuine factual disputes as to whether the sequence of events set forth by Defendants is in fact accurate and whether Franklin was threatening the officers when Officers Peterson and Meath used deadly force and caused Franklin's death. These same factual disputes preclude summary judgment as to Plaintiff's wrongful death claim.

Defendants additionally argue that they are immune under the doctrine of official immunity. Under Minnesota law, "a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion." *Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990). Under this doctrine, "personal liability will only attach when the harmful action is made willfully or maliciously." *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992). It is the

plaintiff's burden to provide proof of the defendant's "intentional doing of a wrongful act without legal justification or excuse." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). Here, given the factual disputes noted above, the Court cannot conclude that Defendants are entitled to summary judgment on the issue of official immunity.

## V.      Count 4:  Negligence

Finally, Defendants argue that Plaintiff's claim for negligence should be dismissed.  "A defendant in a negligence action is entitled to summary judgment when the record reflects a complete lack of proof on any of the four elements necessary for recovery:  (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001) (citing *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995)).

Defendants present evidence detailing their internal procedures regarding the training, supervision, selection, and retention of officers such as Officers Peterson and Meath.  (*See generally* Doc. No. 51.)  Plaintiff presents no evidence identifying any factual dispute with respect to this evidence.  *C.f., Anderson*, 477 U.S. at 248 (concluding that a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial").  Indeed, Plaintiff does not appear to oppose Defendants' Motion for Summary Judgment with respect to his negligence claim.  Therefore, the Court grants Defendants' Motion for Summary Judgment as to this claim.

## CONCLUSION

Defendants present credible evidence of the circumstances surrounding the use of deadly force against Franklin by Officers Peterson and Meath.  However, with respect to Plaintiffs' excessive force and wrongful death claims, Defendants have not demonstrated that there is no genuine dispute of material fact.  Indeed, Plaintiff's evidence raises fact questions regarding the sequence of events leading to the use of deadly force against Franklin, as well as the existence and nature of any threat posed by Franklin when the officers shot him.  These disputes preclude summary judgment as to Counts 1 and 2.  Plaintiff does not, however, contest summary judgment as to Count 4, and accordingly, the Court grants Defendants' Motion as to that claim.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. [47]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Defendants' Motion is **GRANTED** as to Count 4, Plaintiff's negligence claim.  As such, Count 4 is **DISMISSED WITH PREJUDICE.**

    b. Defendants' Motion is **DENIED** as to Counts 1 and 2, Plaintiff's claims under 42 U.S.C. § 1983 and Plaintiff's wrongful death claim.

Dated:  November 10, 2016          s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge